IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLARA HARRIS

    Plaintiff,

     v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION FILE

NO. 1:04-CV-3283-GGB

## <u>FINAL ORDER</u>

Plaintiff, Clara Harris, through counsel, brings this action to obtain judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.  A hearing before an Administrative Law Judge ("ALJ") was held on January 20, 2004.  On June 16, 2004, the ALJ issued a decision denying plaintiff's claim.  (Tr. 14-21).  Plaintiff has exhausted her administrative remedies, and this case is ripe for judicial review.  The parties have consented to jurisdiction by the undersigned magistrate judge.  For the reasons stated below, the Commissioner's final decision denying plaintiff's application for a period of disability and disability insurance benefits is **REVERSED** and this action is **REMANDED** to the Commissioner for additional proceedings consistent with this opinion.

I.    **FACTS**

Plaintiff was 58 years old at the time of the administrative hearing.  She had a high school education and past work experience as a housekeeper, laundry worker, and commercial cleaner.  Her reading and math skills were at the third- and fifth-grade levels, respectively.  (Tr. 308).

A.    Medical Evidence

Plaintiff has multiple medical problems and has been diagnosed at various times with osteoarthritis of the right shoulder, elbow, and wrist; inflammatory arthropathy secondary to osteoarthritis; right shoulder tendonitis; degenerative joint disease; hypertension; hypercholesterolemia; hypothyroidism; status post left total knee replacement, secondary to osteoarthritis; likely diffuse pain syndrome/fibromyalgia; obesity; and depression.  (Tr. 161, 177, 193, 200, 215-17, 226, 230, 233, 235, 244). Plaintiff alleges that she became disabled on May 31, 2001.

On physical examination on April 30, 2002, plaintiff's height was listed as 66.5 inches and she weighed 269 pounds.  (Tr.  215).  In November 2003, her weight was 280 pounds.  (Tr. 220).  Plaintiff's testimony and other medical records put her height at 69 inches.  (Tr. 137, 163, 294).

2

Plaintiff's complaints of pain are documented throughout her medical history. Plaintiff's most recent medical records (covering April to November 2003), for example, demonstrate that she complained of pain in her thumb, wrist, hand, elbow, knees, foot and shoulder.  (Tr. 230,233, 237, 238).  In July 2003, plaintiff's shoulder pathology was confirmed by an MRI, but notes from the Grady Orthopedic Clinic state that she was "not a good surgical candidate (minimal prognostic improvement)."  (Tr. 234).  In September 2003, plaintiff's gait was noted to be limited by knee pain.  (Tr. 228).  Plaintiff takes numerous prescription medications for her pain.  (Tr. 111).

Two State Agency non-examining doctors, John Heard and John Hollender, gave opinions in 2002 regarding plaintiff's functional capacities.  In June 2002, Dr. Heard found plaintiff could occasionally lift 20 pounds and could frequently lift 10 pounds; could stand, walk, and sit about six hours in an eight-hour day; could engage in unlimited pushing and pulling, and occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  (Tr. 178-79).  Dr. Heard noted that plaintiff initially experienced good results from her total knee replacement in 2001, but had poor follow-up.  He also noted that plaintiff has degenerative joint disease in her lower extremities, particularly in her right knee; hypothyroidism; GERDs; and obesity.  (Tr. 178-79).

3

Dr. Hollender, a psychologist, gave his opinion in April 2002.  He noted that plaintiff had medically determinable impairments of depression, anxiety, and possible borderline intellectual functioning.   Her depressive syndrome was characterized by sleep disturbances and decreased energy.  (Tr. 200).  He concluded that plaintiff's mental impairments mildly restrict her activities of daily living; create mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; moderate ability to understand and remember detailed instructions; and moderate ability to carry out detailed instructions.  (Tr. 207, 211). Finally, Dr. Hollender stated that plaintiff can remember, understand, and perform simple tasks, but that she cannot perform detailed tasks unless they are familiar to her. (Tr. 213).

Gavin B. Grant[1] of the Grady Clinic, where plaintiff was often treated, completed a functional capacity questionnaire for plaintiff on January 9, 2004.  (Tr. 271-73).  He

---

[1]The ALJ referred to this individual as "Lavin B. Grant," but his first name appears to be Gavin.  It is not clear from the record that Gavin B. Grant is a physician, but the Composite State Board of Medical Examiners website lists Gavin Bayan Grant as a physician at the the Grady Clinic in Atlanta, with a licensure date of March 24, 2004.   The ALJ appears to have assumed that Grant was a physician when he completed a questionnaire on plaintiff's behalf, (Tr.18), and the undersigned will do so as well.

identified plaintiff's symptoms as chronic joint pain.  He checked "yes" when asked if plaintiff's condition, including medication side effects, would cause her to have to rest or lie down at unpredictable intervals during an eight hour day.  (Tr. 272).  He opined that plaintiff could walk less that one block without the need to rest, and that she could sit for less than two hours and stand/walk for less than two hours in an eight hour work day.  He also opined that plaintiff would not be able to maintain full time employment as a housekeeper, but that she could maintain full time employment in a different capacity.  (Tr. 273).  Dr.Grant had previously treated plaintiff on October 3, 2003 at the Grady outpatient clinic.  (Tr. 225-26).[2]

B.    Evidence from the Administrative Hearing

At the administrative hearing, plaintiff wore a brace on her right hand.  She testified that she could not perform her past work as a housekeeper because of pain in her hand.  She also stated that she suffers form joint swelling in her knee, legs, shoulder, and ankle; and numbness in her leg.  (Tr. 299-300).  She said that her medications sometimes cause dizziness that requires her to lie down.  (Tr. 299).  Some

---

[2]Additional medical history is set forth in the ALJ's opinion and in the plaintiff's brief.

5

mornings she was so stiff that she could hardly move.  (Tr. 305).  Her former job as a housekeeper required her to be on her feet all day and to do a lot of bending, stooping, and reaching.  (Tr. 300).

Plaintiff testified that she used to walk for about 45 minutes a day, but as of four or five months prior to the administrative hearing, she no longer could do that, although she still walked around her house.  (Tr. 305-6).  Plaintiff's activities around the house consisted of straightening up her room and washing the dishes.  She stated that she used to help with the cooking, but she could not do that any more because her hand sometimes becomes numb.  (Tr. 300-01).

A vocational expert ("VE") also testified at the administrative hearing.  The ALJ asked the VE to consider a hypothetical individual of plaintiff's age, educational background, reading and math skills, and past relevant work, who suffers from pain at the moderate level or below.  (Tr. 309).  He also specified that the hypothetical individual would have a residual functional capacity consistent with that set forth for plaintiff by Dr. Heard, the State Agency doctor, on June 4, 2002, (Tr. 177-184), and non-exertional limitations consistent with those set forth for plaintiff by Dr. Hollender, the State Agency psychologist, on April 25, 2002, (Tr. 197-213).  Based on this hypothetical, the VE opined that such an individual could return to plaintiff's past work

6

as a cleaner/housekeeper.  (Tr. 309).  When the level of pain was increased to "marked," the VE opined that such an individual would not be able to perform plaintiff's past relevant work, or any other work in the national economy.  (Tr. 310).

## II.   ALJ'S FINDINGS

The ALJ found that plaintiff had unspecified severe "musculoskeletal and mental problems," but that her impairments were not sufficiently severe to meet or equal any of the impairments in the Commissioner's Listing of Impairments.  (Tr. 18).  He further found that plaintiff had the residual functional capacity set forth in the reports of the State Agency non-examining doctors, John Heard and John Hollender, with a moderate level of pain.  Finally, he found that, with this residual functional capacity, plaintiff could return to her past work as a housekeeper.  (Tr. 19).

## III.   STANDARD OF REVIEW

In reviewing the Commissioner's decision, this court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court's only role is to determine whether the Commissioner applied the proper legal standards and whether

substantial evidence exists in the record to support the Commissioner's findings. Walden v. Schweiker, 672 F.2d 835 (11th Cir. 1982); 42 U.S.C. § 405(g).  This does not, however, "relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether the substantial evidence supports each essential administrative finding."  Walden, 672 F.2d at 838.  Indeed, "[i]t is incumbent upon the reviewing court to examine the findings and decisions of the [Commissioner] in light of the record in its entirety, not only that evidence which supports the decision."  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

In contrast to the Commissioner's findings of fact, no presumption of validity attaches to the Commissioner's application of the law.  Lamb, 847 F.2d at 701.  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).  Thus, the Commissioner must "apply the correct law" and, importantly, must also "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted . . . ."  Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)(citing Cornelius v. Sullivan, 936 F.2d 1143, 1146 (11th Cir. 1991)).

8

## IV.   **DISCUSSION**

### A.   Obesity

Plaintiff's obesity was frequently noted in her medical records, (Tr. 161, 177, 179, 206, 234, 235), yet the ALJ failed to mention it.  Social Security Ruling ("SSR") 02-1P provides that an individualized assessment of the impact of obesity on an individual's functioning is required when deciding whether obesity is a severe impairment.  SSR 02-1P § 6, 2000 WL 628049 at *4.  Additionally, the ALJ is required to assess the combined effect of a claimant's impairments when determining whether a claimant has a severe impairment or combination of impairments throughout the five-step analytical process use for evaluation disability claims.  20 C.F.R. § 404.1523. An impairment is not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to perform basic work activities, irrespective of age, education, or work experience.  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984).  Basic work activities, in turn, are defined as those abilities and aptitudes necessary to perform most jobs.  20 C.F.R. § 416.921.

Obesity must also be considered in assessing a claimant's residual functional capacity, because it may cause serious limitations in any of the exertional functions,

including sitting, standing, walking, lifting, pushing and pulling.  SSR 02-1P § 8, 2000 WL 628049 at *6.  "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  Id.  Due to fatigue, individuals with obesity may have difficult maintaining the physical and mental demands of sustained work activity.  Id. Finally, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."  Id.

In this case, the ALJ provided no indication that he had considered plaintiff's obesity when determining her impairments or when evaluating her residual functional capacity.  He failed to make a determination as to whether plaintiff's obesity a severe impairment, either by itself or in combination with other impairments, or to determine obesity's effect on plaintiff's residual functional capacity.  Remand is necessary for the ALJ to consider plaintiff's obesity as required by SSR 02-1P.  See Williams v. Barnhart, 186 F.Supp.2d 1192 (M.D.Ala. 2002); Boston v. Barnhart, 332 F.Supp.2d 879 (D.Md. 2004).

B.    Pain

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain, which she contends is the primary cause of her inability to work.   "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings . . . which show the existence of a medical impairment . . .which could reasonably be expected to produce the pain . . . . "  42 U.S.C. § 423(d)(5)(A).  In general, the ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529(a).

In determining whether the medical signs and laboratory findings show medical impairments which could reasonably be expected to produce the alleged pain, the ALJ must apply the Eleventh Circuit's "pain standard," which requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Under this standard, pain alone can be disabling, even when its severity is not

11

supported by objective medical evidence.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); see also 20 C.F.R. § 404.1529(c)(2)("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

If the ALJ finds that the claimant has a medical condition that could be expected to produce the alleged pain, the ALJ must then evaluate the intensity and persistence of the claimant's pain so that he can determine how it limits the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In making this evaluation, the ALJ must consider all of the available evidence, both medical and testimonial.  Id.

Although ALJ credibility determinations regarding pain testimony are ordinarily given deference, where that testimony is crucial, the ALJ must articulate explicit and adequate reasons for rejecting it.  See, e.g., Foote, 67 F.3d at 1561-62; Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  A lack of a sufficiently explicit credibility finding is a ground for remand when credibility is critical to the outcome of the case.  See, e.g., Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

In this case, plaintiff's credibility was crucial to the outcome of the case because she testified that pain prevented her from performing her past work as a housekeeper. The ALJ rejected her testimony, at least in part, and found that she could in fact return to her past work as a housekeeper.  However, it is not clear if, or how, the ALJ applied the pain standard set forth above.  In particular, it is not clear whether or not the ALJ found that plaintiff's medical conditions were of such a severity that they could reasonably be expected to give rise to the alleged pain.  Assuming that the ALJ found that plaintiff's medical conditions were sufficiently severe, it is not clear what his reasons were for rejecting plaintiff's testimony.

In the analysis section of his opinion, the ALJ mentions the following as evidence that plaintiff "retains the ability to perform some work-related activities": (1) On April 30, 2002, plaintiff could ambulate without any assistive device, x-rays of her right knee showed only minimal osteoarthritis, and her left hip x-ray was normal; and (2) on September 3, 2002, plaintiff reported exercising three times per day, with continued improvement in her left knee range of motion and strength**.**  (Tr. 18).

If plaintiff did have conditions that could reasonably be expected to produce her alleged pain, then the absence of x-rays confirming her statements would not, by itself, be a proper basis for rejecting plaintiff's pain complaints.   <u>See</u> 20 C.F.R.

AO 72A
(Rev.8/82)

§ 404.1529(c)(2); Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991)(finding that objective proof of the symptom itself is not required); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)(same).

Moreover, the ALJ's decision was on June 16, 2004, and does not appear to take into consideration all of the contradictory medical evidence dated after 2002. The ALJ relied heavily on opinions given in 2002 by non-examining state doctors. In July 2003, however, plaintiff's chronic pain and shoulder pathology were confirmed by an MRI, (Tr. 234); in September 2003, plaintiff was not responding to physical therapy, (Tr. 228); and on October 13, 2003, plaintiff was using a walking cane, (Tr. 223). The ALJ only makes cursory mention of the medical evidence from 2003.

The ALJ also relied on evidence that plaintiff told Donald Kent, Ph.D., during a mental status evaluation on April 15, 2002, that she straightened her room, cleaned the kitchen, washed dishes, cleaned the bath, straightened the living room, took care of her granddaughter, talked on the phone, visited her daughter, and shopped. (Tr. 17, 194). However, at the administrative hearing, over twenty months later, on January 20, 2004, plaintiff testified that her activities were more limited. (Tr. 300-01, 303-06). She could not walk as she used to do, and she sometime had problems taking care of her

14

personal needs, such as bathing and dressing herself, because of stiffness.  (Tr. 305-06).

Finally, it is not clear if the ALJ considered the effect of plaintiff's medications on her ability to work.  Plaintiff was taking numerous prescription medications, and both she and Dr. Gavin stated that these medicines had an effect on her ability to work. The applicable regulations direct the ALJ, in evaluating pain, to consider, among other things, the type, dosage, effectiveness ,and side effects of any medication the claimant takes, or has taken, to alleviate pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).[3]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's final decision denying plaintiff's application for a period of disability and disability insurance benefits is **REVERSED** and this action is **REMANDED** to the Commissioner for additional proceedings consistent with this opinion.  On remand, the ALJ should consider the effects of plaintiff's obesity, clarify his application of the pain standard, discuss the effect of

---

[3]Because remand is required for proper application of the pain standard and for consideration of the effects of plaintiff's obesity, the court will not address plaintiff's remaining arguments.

15

plaintiff's medications on her ability to work, and discuss in more detail, the medical evidence and other evidence dated after 2002.

      **IT IS SO ORDERED** this 7th day of April 2006.

_____/s/ Gerrilyn G. Brill_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

16